IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RENE CASIANO-VARGAS,

     Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

CIVIL NO.: 14-1418 (MEL)

## OPINION AND ORDER

### I.    PROCEDURAL AND FACTUAL BACKGROUND

René Casiano-Vargas ("plaintiff" or "claimant") was born May of 1966 and obtained a G.E.D. by self-education. (Tr. 202.) Prior to his initial application for Social Security disability benefits, plaintiff worked as a security guard. Id. Plaintiff has not engaged in any substantial gainful activity since December 14, 2009, which is the *alleged* onset date of his disability. (Tr. 16.) The date last insured was December 31, 2014. Id. On May 11, 2011, plaintiff filed an application for Social Security disability insurance benefits, alleging disability on the basis of a degenerative disc disease of the lumbar spine, cervical myositis, peripheral neuropathy, asthma, and depression. (Tr. 19.) The claim was denied initially on November 8, 2011, and upon reconsideration on January 5, 2012, whereby the claimant filed a written request for hearing. (Tr. 16.) Id. The plaintiff was granted benefits on reconsideration, with an *established* onset date of May 24, 2011. Id. Plaintiff requested a hearing alleging the earlier disability onset of December 14, 2009. Id. The request was granted and the hearing was held on January 17, 2013. (Tr. 32-34.) At the hearing, plaintiff waived his right to appear and testify but he was represented by counsel. (Tr. 32-34.)  A vocational expert ("VE") testified by telephone. (Tr. 32-34.) The administrative

law judge ("ALJ") rendered a decision on March 15, 2013, finding that plaintiff was not disabled during the period in question, from December 14, 2009 through May 23, 2011. (Tr. 27.) The Appeals Council denied plaintiff's request for review on March 27, 2014. (Tr. 1.) Therefore, the ALJ's opinion became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). Id.

On May 21, 2014, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, alleging that defendant's finding that plaintiff was not disabled between December 14, 2009 and May 23, 2011 was not based on substantial evidence. ECF No. 1, ¶ 2, 6. Defendant filed an answer to the complaint and a certified transcript of the administrative record. ECF Nos. 11, 12. Plaintiff and the Commissioner have filed supporting memoranda of law. ECF Nos. 17, 20.

## II.    STANDARD OF REVIEW

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence *de novo*. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Commissioner's fact findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

An individual is deemed to be disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under steps one through four of the disability review process, the plaintiff has the burden to prove that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III.   SUMMARY OF RELEVANT MEDICAL EVIDENCE[2]

On March 23, 2010, plaintiff began psychiatric treatment at the State Insurance Fund. (Tr. 291.) On August 10, 2010, Dr. Alberto Rodríguez Robles ("Dr. Rodríguez Robles"), the treating psychiatrist, observed that the plaintiff was depressed, had retarded psychomotor activity, diminished attention and concentration and feelings of worthlessness, hopelessness and

---

[1] An individual's RFC is the most that he can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

[2] Plaintiff does not argue that any physical impairment or combination of physical impairments were the cause of his disability during the period in question; therefore, only the evidence regarding his mental health evidence is summarized in this opinion.

helplessness but that plaintiff's thoughts were logical, coherent and relevant, and his immediate, recent, and long-term memory were adequate. (Tr. 264). Dr. Rodríguez Robles diagnosed the plaintiff with major depressive disorder, single episode, severe without psychotic features and gave a reserved prognosis. Id. In an examination on October 2, 2010, Dr. Rodríguez Robles, described the plaintiff as alert, cooperative, oriented, coherent, logical and relevant. (Tr. 256.) Additional examinations on October 25, 2010, January 31, 2011, and May 17, 2011 revealed no changes in the plaintiff's mental state.[3] (Tr. 251, 254.)

The plaintiff was evaluated by Dr. Efren Mangual Cordero ("Dr. Mangual Cordero") on a consultative basis on September 6, 2011.[4] (Tr. 315-319). Dr. Mangual Cordero observed that plaintiff experienced a depressive mood, sadness, anxiety, loss of motivation, and moderately retarded psychomotor activity. (Tr. 315-317.) He observed that plaintiff was partially oriented, had good intermediate, recent and long-term memory but poor short-term memory—plaintiff could not recall any of the three words given after five minutes—and only partial attention and concentration. (Tr. 318.) He observed a restricted affect, superficial judgment, and partial intellectual capacity, attention, and concentration and orientation. Meanwhile, Dr. Mangual Cordero observed that plaintiff's thought process was logical, coherent and relevant. (Tr. 317.) Dr. Mangual Cordero diagnosed plaintiff with a moderate major depressive disorder with psychosis, expressed a reserved prognosis, and indicated that the plaintiff was totally disabled or incapable of assuming total responsibility over himself or his funds. (Tr. 315-320.)

---

[3] During the period in question, December 14, 2009 through May 23, 2011, there is no medical evidence on the record that suggests plaintiff's mental health, including his attention, ability to concentrate, or memory, was declining.

[4] Dr. Mangual Cordero's consultative evaluation occurred after the established onset date, *not* during the period in question. However, because plaintiff's arguments involved Dr. Mangual Cordero's findings, a summary of his findings are included in this opinion.

IV.   ANALYSIS

### A.  Disability under Listing 12.04

To be depressed for purposes of Listing 12.04, claimant must show medically documented persistence of depressive syndrome characterized by at least four of the following: a) anhedonia or pervasive loss of interest in almost all activities; b) appetite disturbance with change in weight; c) sleep disturbance; d) psychomotor agitation or retardation; e) decreased energy; f) feelings of guilt or worthlessness; g) difficulty concentrating or thinking; h) thoughts of suicide; or, i) hallucinations, delusions, or paranoid thinking. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Then the claimant must satisfy the "paragraph B" criteria requiring two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or, 4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Plaintiff argues that the ALJ reached inconsistent findings with regard to whether claimant's depression met the criteria under Listing 12.04, as he found that based on Dr. Mangual Cordero's assessment claimant satisfied the Listing 12.04 criteria, while based on Dr. Rodríguez Robles's assessment claimant did not meet the criteria. ECF No. 17, at 17-18. He rests this argument on the assertion that Dr. Mangual Cordero and Dr. Rodríguez assessed "more or less the same mental severity." Id. at 17.

Contrary to the premise of plaintiff's argument, there were substantial differences between the observations of Dr. Rodríguez Robles and Dr. Mangual Cordero that support the ALJ's conclusions regarding the applicability of Listing 12.04. Dr. Rodríguez Robles did not indicate the plaintiff had any memory problems, whereas Dr. Mangual Cordero observed that plaintiff had poor short-term memory—he was unable to remember three words given five

minutes prior. (Tr. 318.) Dr. Rodríguez Robles' diagnosis did not include psychosis, whereas Dr. Mangual Cordero's did. (Tr. 264, 319.) Dr. Mangual Cordero opined that the plaintiff was totally disabled or incapable of assuming total responsibility over himself. (Tr. 319.) In contrast, Dr. Rodríguez Robles did not render an overall opinion regarding plaintiff's work-related restrictions and abilities resulting from his mental health.

Because of Dr. Mangual Cordero's opinion and findings, including the total inability to recall any of three words after five minutes, coupled with the psychomotor retardation and partial attention, concentration and intellectual capacity, the ALJ found that the plaintiff's depression as of the established onset date of May 24, 2011 resulted in marked restrictions of activities of daily living, mild difficulties maintaining social functioning, and marked difficulties maintaining concentration. (Tr. 20.) In contrast, the ALJ concluded that the limitations from plaintiff's depression from December 14, 2009 through May 23, 2011 were consistent with only moderate difficulties maintaining concentration. Id. During the established onset period beginning May 24, 2011, the plaintiff's mental impairment caused two marked limitations; however, the plaintiff had only one marked limitation during the period in question, from December 14, 2009 to May 23, 2011. Thus, at this third step in the five-step analysis, based on substantial medical evidence, the ALJ concluded the plaintiff was disabled from for purposes of Listing 12.04 as of May 24, 2011, but that he was not disabled for purposes of Listing 12.04 before that date, when Dr. Rodríguez Robles rendered his assessment.

### B. Mental RFC Assessment and Hypothetical Question to the VE

The plaintiff also argues that the ALJ should have included a limitation regarding diminished attention and concentration in the RFC and the corresponding hypothetical question to the VE. ECF No. 1, at 14. He argues that because both Dr. Mangual Cordero and

Dr. Rodríguez Robles observed that plaintiff had diminished concentration and attention, and that the ALJ relied on Dr. Mangual Cordero's evaluation to conclude the plaintiff was disabled after May 24, 2011 under the Listing 12.04, that the similarities in the two evaluations warranted an RFC determination that included an attention and concentration limitation. ECF No. 1, at 17-29. Plaintiff further argues that based on the ALJ's flawed RFC analysis, the hypothetical question the ALJ posed to the VE was incomplete because it did not include attention and concentration limitations.

The analysis conducted in step three to determine whether a plaintiff qualifies as disabled under a listing is a separate and distinct analysis from the ALJ's evaluation of the plaintiff's RFC in step four. 20 C.F.R. § 404.1520. Since the two analyses are distinct, the use of Dr. Mangual Cordero's observations to conclude that plaintiff was disabled for purposes of Listing 12.04 does not necessitate that the ALJ's determination of the RFC in step four perfectly embody the findings regarding Listing 12.04 in step three. Moreover, Dr. Mangual Cordero's evaluation occurred after the established onset date, not during or before the period at issue in this case. He evaluated plaintiff on September 6, 2011, which is more than three months after the established onset date and approximately twenty months after the alleged onset date of December 14, 2009. Thus, considering when each evaluation took place relative to the period in question, the ALJ had good reasons for treating the evidence from Dr. Mangual Cordero's evaluation differently from the evidence from Dr. Rodríguez Robles's evaluation to determine plaintiff's RFC for the period at issue.

Ultimately, the ALJ gave "great weight" to Dr. Rodríguez Robles's opinion regarding claimant's mental health between December 14, 2009 and May 23, 2011. (Tr. 25.) Although Dr. Rodríguez Robles noted a limitation in claimant's ability to maintain attention and

concentration, the ALJ determined that claimant had the RFC "for light work . . . with an ability to understand, remember, and execute *simple* tasks." (Tr. 22.) (emphasis added). Thus, although the ALJ did not specifically mention an additional limitation in claimant's ability to concentrate in the RFC, claimant's difficulties in maintaining attention and concentration are subsumed within the ALJ's expression that claimant can execute simple tasks, implying that he is restricted in his ability to execute more complex jobs, which require greater attention and concentration to complete. The ALJ directly incorporated her RFC determination into the hypothetical question to the VE, asking whether there were jobs in the national economy for an individual who has the ability to perform light work, with additional physical limitations not relevant here, and "an ability or [*sic*] to understand, remember, and execute simple tasks." (Tr. 38.) Thus, like the RFC determination, the hypothetical question incorporated claimant's limited ability to concentrate and maintain attention by excluding jobs with more complex duties. See Sohm v. Astrue, No. 3:07CV257–J, 2008 WL 2437541, at *3 (W.D.Ky. June 13, 2008) (finding that hypothetical question was supported by substantial evidence where moderate limitation in abilities to maintain concentration, persistence and pace were not expressly mentioned but, "[i]nstead of enumerating particular ways in which the limitations might affect [plaintiff], the ALJ simply assumed the inability to perform in certain ways . . . [such as] assum[ing] that [claimant] could do only 'simple, repetitive work.'"). The ALJ did not err in excluding an additional attention and concentration limitation when she presented the hypothetical question to the VE, as the hypothetical question need only reasonably incorporate the disabilities recognized by the ALJ, see Vélez-Pantoja v. Astrue, 786 F.Supp.2d 464, 469 (D.P.R. 2010), and claimant's limited attention and concentration was accounted for in the form of a limitation on the types of tasks he could perform.

Finally, plaintiff argues that the ALJ should have included a forty-five minute attention and concentration limitation. ECF No. 17, at 20, 21; (Tr. 40.). This argument fails because it rests on a series of unsupported assumptions. First, plaintiff infers his inability to concentrate and maintain attention for more than forty-five minutes because he assumes that the average psychiatric evaluation takes forty-five minutes to complete. Next, plaintiff assumes that the duration of Dr. Rodríguez Robles' evaluation of plaintiff was equal to the average length of a psychiatric evaluation. However, the record does not indicate the length of the examination; thus, it would be speculative to determine that it was the same duration as the purported average duration of an evaluation. Based on these unsupported assumptions, plaintiff argues that he would not be able to maintain attention or concentrate for two hours. Id. Even assuming the premises of his argument were valid, it would not necessarily follow that the limitation in attention and concentration that Dr. Rodríguez Robles identified during his evaluation of plaintiff would translate into an inability to maintain attention and concentration for two hours during the workday, as the nature of the attention and concentration required for an interview is not necessarily the type of attention and concentration required to perform simple tasks. Moreover, it was the ALJ's ultimate decision, not either of the psychiatrists, to determine, based on the evidence in the record, the plaintiff's attention and concentration abilities for the purposes of the RFC and hypothetical question, and he did not ignore substantial evidence in doing so.

V.     CONCLUSION

The ALJ did not err in determining that plaintiff did not meet the criteria in Listing 12.04 for December 14, 2009 through May 23, 2011 or in formulating plaintiff's RFC and the corresponding hypothetical question to the VE, as substantial evidence supports her findings in

both regards. Based on the foregoing analysis, the Commissioner's decision is hereby

**AFFIRMED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 26th day of June, 2015.

s/Marcos E. López
U.S. Magistrate Judge
